1

Richard A. Smith
Savannah Rose
2

SMITH & LOWNEY, PLLC
2317 East John Street
3

Seattle, Washington 98112
(206) 860-2883
4

5

Attorneys for Waste Action Project

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

| | | |
|---|---|---|
| WASTE ACTION PROJECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| ASSOCIATED PETROLEUM | ) | |
| PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

10

11

12

13

14

15

## I.    INTRODUCTION

16

17

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

18

("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Waste Action Project seeks a declaratory

19

judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including

20

attorneys' and expert witnesses' fees, for Defendant Associated Petroleum Products, Inc.'s

21

("APP") repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§

22

1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination

23

System ("NPDES") Waste Discharge Permit authorizing discharges of pollutants from APP's

facility to navigable waters.

COMPLAINT - 1

## II. JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction over Waste Action Project's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). The relief requested herein is authorized by Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d).

3.     Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Waste Action Project notified APP of its violations of the CWA and of Waste Action Project's intent to sue under the CWA by letter dated and postmarked September 20, 2021 and delivered to APP on September 22, 2021 ("Notice Letter"). A copy of the Notice Letter is attached to this Complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waste Action Project notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, the Director of the Washington Department of Ecology ("Ecology"), and of its intent to sue APP by mailing copies of the Notice Letter to these officials on September 20, 2021.

4.     At the time of filing this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.     The violations complained of in the Notice Letter are continuing and/or are reasonably likely to recur.

6.     At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.     The source of the violations complained of is located in Pierce County within the Western District of Washington, and venue is therefore appropriate in the Western District of

COMPLAINT - 2

Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.   PARTIES

8.      Waste Action Project is suing on behalf of itself and its members.

9.      Waste Action Project is a non-profit corporation organized under the laws of the State of Washington. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waste Action Project is a membership organization and has at least one member who is injured by APP's violations.

10.     Waste Action Project has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including wastewater from APP's facility, on water quality and aquatic species and wildlife that Waste Action Project's members observe, study, and enjoy. Waste Action Project's members are further concerned about the effect of discharges from APP's facility on human health. In addition, discharges from APP's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. Waste Action Project's members' who live, work, fish, and recreate around or use the Blair Waterway, Commencement Bay, Puget Sound, and other waters affected by APP's discharges. Waste Action Project's members' concerns about the effects of APP's discharges are aggravated by APP's failure to record and report information about its discharges, violations, and pollution controls. The recreational, economic, aesthetic and/or health interests of Waste Action Project and its members have been, are being, and will be adversely affected by APP's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

COMPLAINT - 3

11.     Waste Action Project has organizational standing to bring this action. Waste Action Project has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Western Washington, including Blair Waterway, Commencement Bay, and Puget Sound. As detailed herein and in the Notice Letter, APP has failed to comply with numerous requirements of its NPDES Permit including effluent limits, sampling and monitoring, reporting and record keeping, operation and maintenance, permit application, spill control plan, Stormwater Pollution Prevention Plan ("SWPPP"), Best Management Practices ("BMPs"), and General Conditions of its Waste Discharge Permit. As a result, Waste Action Project is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Waste Action Project's efforts to educate and advocate for greater environmental protection and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Waste Action Project and the public are deprived of information that influences members of the public to become members of Waste Action Project, thereby reducing Waste Action Project's membership numbers. Thus, Waste Action Project's organizational interests have been adversely affected by APP's violations. These injuries are fairly traceable to APP's violations and are redressable by the Court.

12.     APP is a provider of fuels, propane, and lubricants in Tacoma, Washington that owns and operates a facility that is authorized to conduct operations and discharge pollutants in the State of Washington.

13.     APP's facility is located at or about 2320 Milwaukee Way Tacoma, WA 98421 (the "facility").

COMPLAINT - 4

1

2                               **IV.    LEGAL BACKGROUND**

3        14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of

4 pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a

5 pollutant from a point source to waters of the United States without authorization by an NPDES

6 permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, constitutes a violation of

7 Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and an "effluent standard or limitation" under

8 Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). Conditions of NPDES

9 permits are effluent standards or limitations under Section 505(a)(1) and (f) of the CWA, 33

10 U.S.C. § 1365(a)(1) and (f). Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), authorizes

11 citizen suits against violators of effluent standards or limitations.

12        15.    The State of Washington has established a federally approved state NPDES

13 program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-

14 220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of

15 the CWA, 33 U.S.C. § 1342(b).

16        16.    Under Section 402(a) of the CWA, 33 U.S.C. § 1342, Ecology has issued APP the

17 Waste Discharge Permit NPDES number WA0038784 (the "Permit"), on September 22, 2011,

18 which became effective on November 1, 2011, and expired on its own terms on October 31,

19 2016 but remains in effect. The Permit authorizes APP to discharge treated

20 stormwater/wastewater to waters of the state, subject to certain terms and conditions.

21        17.    The Permit imposes certain terms and conditions on those covered thereby,

22 including discharge limits, monitoring requirements, reporting and recordkeeping requirements,

23 operation and maintenance requirements, solid waste handling, permit application requirements,

COMPLAINT - 5

spill control plan requirements, SWPPP requirements, BMPs, and general conditions. The Permit requires, among other things, that APP properly operate and maintain all systems of treatment and control at all times.

## V.    FACTS

18.    Ecology granted APP coverage for the facility under the NPDES Waste Discharge Permit number WA0038784.

19.    APP discharges wastewater and pollutants to Blair Waterway which then flows to Commencement Bay and eventually to Puget Sound.

20.    APP owns and operates a wastewater treatment system that consists of an oil/water separator, a settling tank, sand filters, and carbon filters that collects and treats stormwater and wastewater from the facility. APP discharges treated stormwater and wastewater through an outfall pipe that terminates in an unnamed ditch that leads to a ditch along Lincoln Ave, and eventually to Blair Waterway.

21.    APP has violated and continues to violate effluent standards or limitations, as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f), and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violations of its NDPES Permit. APP's violations of the Permit are set forth in sections I through IX of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, APP has violated the Permit by discharging wastewater containing levels of pollutants greater than the effluent limits established in the Permit, failing to meet sampling and monitoring requirements, failing to meet reporting and record keeping requirements, failing to comply with operation and maintenance requirements, failing to comply with permit renewal application requirements, failing to comply

COMPLAINT - 6

with spill control plan requirements, failing to comply with SWPPP requirements, failing to comply with BMP requirements, and violating General Conditions the Permit.

22.     APP discharges wastewater and stormwater from its facility containing levels of pollutants that exceed the effluent limit established by the Permit, including the days on which APP collected samples with the results identified in this paragraph below, and is likely to continue discharging comparably unacceptable wastewater effluent:

| **Date of Violation** | **Reported pH Value (Effluent Limit 6.0-9.0 S.U.)** |
|---|---|
| April 26, 2021 | 5.73 |
| June 11, 2021 | 5.48 |
| September 17, 2021 | 5.33 |
| October 29, 2021 | 9.44 |

| **Month of Violation** | **Reported TSS Value (Effluent Limit 20 mg/L)** |
|---|---|
| January 2017 | 26 |
| October 2021 | 22.8 |

| **Date of Violation** | **Reported Copper Value (Effluent Limit 14 µg/L)** |
|---|---|
| May 11, 2017 | 15.1 |
| February 28, 2018 | 14.3 |
| September 9, 2019 | 26.3 |

| **Date of Violation** | **Reported Zinc Value (Effluent Limit 117 µg/L)** |
|---|---|
| October 4, 2016 | 154 |
| January 19, 2017 | 142 |
| May 11, 2017 | 122 |
| February 28, 2018 | 266 |
| September 9, 2019 | 182 |

COMPLAINT - 7

| | |
|---|---|
| June 9, 2020 | 219 |
| September 18, 2020 | 783 |
| January 25, 2021 | 140 |
| February 18, 2021 | 155 |
| March 25, 2021 | 281 |
| April 26, 2021 | 184 |
| May 7, 2021 | 162 |
| September 17, 2021 | 316 |

23.     APP has failed to monitor the specified parameters according to the schedule established in the Permit. APP has failed to monitor oil and grease monthly in milligrams per liter during the month of July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, July 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021. APP has failed to monitor flow five times per week in gallons per day in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021. APP has failed to monitor pH monthly in standard units in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021. APP has failed to monitor total suspended solids monthly in milligrams per liter in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021. APP has failed to monitor benzene + toluene + ethylbenzene + m.o.p. xylenes ("BTEX") monthly in micrograms per liter in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August

COMPLAINT - 8

2021. APP has failed to monitor benzene monthly in micrograms per liter in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021. APP has failed to monitor copper monthly in micrograms per liter in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, August 2021, and October 2021. APP has failed to monitor zinc monthly in micrograms per liter in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, August 2021, and October 2021. APP has failed to monitor TPH-Gas and TPH-Diesel quarterly in milligrams per liter in the second quarter of 2018.

24.     APP's samples and measurements taken do not represent the volume and nature of its discharges.

25.     APP is failing to use appropriate flow measurement, field measurement, and continuous monitoring devices and methods. APP has failed to install a continuous temperature monitoring device to monitor effluent temperature. APP has also failed to install an influent flow meter to monitor influent flow.

26.     APP failed to submit complete and accurate DMRs by the prescribed time for September 2018, October 2018, and July 2021.

27.     APP failed to submit a contract laboratory report as an attachment with the electronic DMRs for July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, March 2021, April 2021, May 2021, June 2021, July 2021, and August 2021.

COMPLAINT - 9

28.     APP has failed to retain records of all monitoring information for a minimum of three years including original recordings for continuous monitoring instrumentation, copies of all reports, records of all data used to complete the application for this Permit, and other documentation.

29.     APP has failed to include the individual who performed the analyses; the analytical techniques or methods used; and the results of all analyses for July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, March 2021, April 2021, May 2021, June 2021, July 2021, August 2021, September 2021, and October 2021 samples.

30.     APP is in violation of the Permit's requirements to take several actions when APP violates or is unable to comply with a Permit condition, including each of the violations identified in this Complaint. APP has not taken adequate action to stop, contain, and cleanup all unauthorized discharges, including the following events: a 15-gallon diesel spill on January 27, 2020, as documented by the Application for NPDES Permit to Discharge Wastewater Form 2F received by Ecology on December 18, 2020; a 200-gallon fuel oil spill on January 27, 2020, as documented by the January 28, 2020 ERTS Report #696006; a 100-gallon diesel spill on November 30, 2020, as documented by the December 3, 2020 ERTS Report #702255; a 5-gallon diesel spill on August 21, 2019, as documented by the Application for NPDES Permit to Discharge Wastewater Form 2F received by Ecology on December 18, 2020; a Diesel spill that "measured 10 to 20 feet" on February 11, 2019, as documented by the February 14, 2019 ERTS Report #687330; a 1–2-gallon diesel spill on July 22, 2018, as documented by the August, 10, 2018 ERTS Report #683240; other small spills as documented by the June 12, 2018 and August

COMPLAINT - 10

Smith & Lowney, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

24, 2020 Inspection Reports; and as indicated by the discharges in excess of effluent limits identified above in paragraph 22.

31.     APP has failed and continues to fail to report all significant leaks or spills of toxic or hazardous pollutants in the last three years, including a 200-gallon fuel oil spill on January 27, 2020; a 100-gallon diesel spill on November 11, 2020; a diesel spill that "measured 10 to 20 feet" on February 11, 2019; and a 1–2-gallon diesel spill on July 22, 2018.

32.     APP failed to have proper operation and maintenance, which includes keeping a daily operation logbook, adequate laboratory controls, and appropriate quality assurance procedures.

33.     APP has failed to review the Operation and Maintenance Manual ("O&M Manual") at least annually and confirm this review by electronic letter to Ecology by January 1 of each year. APP has failed to submit an O&M Manual by the required deadline of January 1, 2012. Additionally, APP failed and continues to fail to keep the approved O&M Manual at the permitted facility.

34.     APP failed to submit an application for renewal of the Permit by the deadline of January 31, 2015. Additionally, APP failed to submit the application for renewal of the Permit by an already extended deadline of October 31, 2020.

35.     APP has failed to review the Spill Control Plan annually, update as needed, send changes to Ecology, and follow the Spill Control Plan throughout the term of the permit.

36.     APP failed to fail to submit a SWPPP to Ecology by the deadline of January 31, 2015.

37.     Until October 27, 2021, APP failed to modify the SWPPP each and every time during the last five years there have been changes to the design, construction, operation, or

Smith & Lowney, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

maintenance, which causes the SWPPP to be less effective in controlling the pollutants, description of potential pollutant sources or the pollution prevention measures and controls identified in the SWPPP are inadequate.

38.     APP has failed to prepare a SWPPP in accordance with the guidance provided in the Stormwater Pollution Prevention Planning for Industrial Facilities.

39.     APP has failed to conduct two inspections per year addressing potential SWPPP modifications, one during the wet season (October 1 - April 30) and the other during the dry season (May 1 - September 30) each and every year for the last five years.

40.     APP has failed to perform evaluations of methods to reduce pollutant loadings identified in the SWPPP and maintain the required records related to these evaluations.

41.     APP has failed to implement the required BMPs and incorporate them into its SWPPP as required by the Permit. These requirements and APP's violations thereof are described in detail in section VII of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

42.     APP failed to satisfy the signatory requirement of the Permit each time during the last five years that it failed to have an authorized individual sign and certify an application, report, or other information that was submitted to Ecology.

43.     APP failed to notify Ecology when its discharges exceeded the "notification levels" established by Condition G20 of the Permit.

44.     APP failed to submit a report of noncompliance, progress report, or other requirements to Ecology within 14 days following each schedule date.

COMPLAINT - 12

45.     APP has failed to control production and/or all discharges upon reduction, loss, failure, or bypass of the treatment facility until the facility is restored or an alternative method of treatment is provided in order to maintain compliance.

46.     Each of APP's violations of the Permit and the CWA are ongoing in that they are currently occurring or are likely to re-occur at least intermittently in the future.

47.     A significant penalty should be imposed against APP pursuant to the penalty factors set forth in Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

48.      APP's violations of the CWA degrade the environment and the water quality of the receiving water bodies.

49.     APP has benefited economically as a consequence of its CWA violations and its failure to implement stormwater and wastewater management improvements at the facility.

50.     APP's violations were avoidable had APP been diligent in overseeing facility operations and maintenance.

51.     In accordance with Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Waste Action Project is mailing a copy of this Complaint to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSE OF ACTION

52.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

53.     APP's violations of the Permit described herein and in the Notice Letter constitute violations of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of

COMPLAINT - 13

an "effluent standards or limitations" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

54.    No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 USC 1365(a).

55.    Prior notice of violations and claims was provided to Defendant and others as required.

56.    These violations committed by APP are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permit and the CWA which occur after those described in Waste Action Project's Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

57.    Without the imposition of appropriate civil penalties and the issuance of an injunction, APP is likely to continue to violate the Permit and the CWA to the further injury of Waste Action Project, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Waste Action Project respectfully requests that this Court grant the following relief:

A.    Issue a declaratory judgment that APP has violated and continues to be in violation of the Permit and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B.    Enjoin APP from operating its facility in a manner that results in further violations of the Permit or the CWA;

C.    Order APP to allow Waste Action Project to participate in the development and implementation of a plan to achieve compliance with the Permit and the CWA;

COMPLAINT - 14

D.      Order APP to provide Waste Action Project, for a period beginning on the date of the Court's Order and running for three years after APP achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which APP submits to the EPA or to the Ecology regarding APP's coverage under the Permit at the time it is submitted to these authorities;

E.      Order APP to take specific actions to remediate the environmental harm caused by its violations;

F.      Order APP to pay civil penalties of $56,461 per day of violation for each violation committed by APP pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

G.      Award Waste Action Project its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

H.      Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 10th day of December, 2021.

By:      By: _s/ Richard A. Smith_
         Richard A. Smith, WSBA #21788
         By: _s/ Savannah Rose_
         Savannah Rose, WSBA #57062
         Attorneys for Waste Action Project
         Smith & Lowney, PLLC
         2317 E. John St.,
         Seattle, WA 98112
         Telephone: (206) 860-2124
         Fax: (206) 860-4187
         Email: richard@smithandlowney.com,
         savannah@smithandlowney.com

COMPLAINT - 15

Exhibit 1

## Smith & Lowney, PLLC
### 2317 East John Street
### Seattle, Washington 98112
(206) 860-2883, Fax (206) 860-4187

September 20, 2021

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Associated Petroleum Products, Inc.
P.O. Box 1397
Tacoma, WA 98401

Managing Agent
Associated Petroleum Products, Inc.
2320 Milwaukee Way
Tacoma, WA 98421

Managing Agent
Associated Petroleum Products, Inc.
2326 Milwaukee Way
Tacoma, WA 98421

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

    We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter is to provide you with sixty days' notice of Waste Action Project's intent to file a citizen suit against Associated Petroleum Products, Inc. ("APP"), under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.

    APP was granted coverage for its facility under the Waste Discharge Permit issued by the Washington Department of Ecology ("Ecology") effective November 1, 2011, under NPDES No. WA0038784 (the "Permit").  The Permit expired by its own terms on October 31, 2016 but remains in effect.

    APP has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)(7); 33 U.S.C. § 1311(a) including the terms and conditions of the Permit with respect to operations of, and discharges of wastewater and pollutants from its property located at or about 2320 Milwaukee Way Tacoma, WA 98421 (the "facility") as described herein, to Blair Waterway via Lincoln Avenue Ditch via unnamed drainage ditch.

Notice of Intent to Sue - 1

The facility subject to this notice includes any contiguous or adjacent properties owned or operated by APP.

## I.     EFFLUENT LIMIT VIOLATIONS

Condition S1.A of the Permit establishes numerical effluent limitations for discharges of oil and grease, total suspended solids (TSS), BTEX, NWTPH-Gx, TPH-Dx, Benzene, Copper, Zinc, and pH.

i.      Condition S1.A of the Permit establishes daily minimum limitation for pH at 6.0 standard units and daily maximum pH at 9.0 standard units.  APP has violated this limitation:

| Month of Violation | Reported pH Value (s.u.) |
|---|---|
| April 2021 | 5.73 |
| June 2021 | 5.48 |

ii.     Condition S1.A of the Permit establishes the average monthly limitation for TSS concentration at 20 mg/L.  APP has violated this limitation:

| Month of Violation | Reported TSS Value (mg/L) |
|---|---|
| January 2017 | 26 |

iii.    Condition S1.A of the Permit establishes the daily maximum limitation for copper at 14 μg/L.  APP has violated this limitation:

| Month of Violation | Reported Copper Value (μg/L) |
|---|---|
| May 2017 | 15.1 |
| February 2018 | 14.3 |
| September 2019 | 26.3 |

iv.     Condition S1.A of the Permit establishes the daily maximum limitation for zinc at 117 μg/L.  APP has violated this limitation:

| Month of Violation | Reported Zinc Value (μg/L) |
|---|---|
| October 2016 | 154 |
| January 2017 | 142 |
| May 2017 | 122 |
| February 2018 | 266 |
| September 2019 | 182 |
| June 2020 | 219 |
| September 2020 | 783 |
| January 2021 | 140 |
| February 2021 | 155 |
| March 2021 | 281 |
| April 2021 | 184 |
| May 2021 | 162 |

Notice of Intent to Sue - 2

## II.     SAMPLING AND MONITORING REQUIREMENT VIOLATIONS

A.     Condition S2.A of the Permit requires APP to monitor specified parameters according to the established schedule for wastewater discharged from the facility.  APP has violated and continues to violate this condition by failing to monitor as identified below:

      i.     Condition S2.A of the Permit requires that oil and grease be monitored monthly in milligrams per liter.  APP violated this condition by failing to monitor oil and grease in milligrams per liter during the month of July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, July 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021.

      ii.     Condition S2.A of the Permit requires that flow be monitored five times per week in gallons per day, pH be monitored monthly in standard units, total suspended solids ("TSS") be monitored monthly in milligrams per liter, benzene + toluene + ethylbenzene + m,o,p xylenes ("BTEX") be monitored monthly in micrograms per liter, benzene be monitored monthly in micrograms per liter, copper be monitored monthly in micrograms per liter, and zinc be monitored monthly in micrograms per liter.  APP violated this condition by failing to monitor these parameters in July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, July 2021, and August 2021.

      iii.     Condition S2.A of the Permit requires TPH-Gas and TPH-Diesel be monitored quarterly in milligrams per liter.  APP violated this condition by failing to monitor these parameters in the second quarter of 2018.

B.     Condition S2.B of the Permit requires that APP's samples and measurements taken to meet the requirements of this permit must represent the volume and nature of the monitored parameters, including representative sampling of any unusual discharge or discharge condition, including bypasses, upsets, and maintenance-related conditions affecting effluent quality.  *See* Guidelines Establishing Test Procedures for the Analysis of Pollutants contained in 40 CFR Part 136.  APP violated and continues to violate this requirement each and every time it fails to take samples that represent the volume and nature of the monitored parameters.

C.     Condition S2.C of the Permit requires APP to select and use appropriate flow measurement, field measurement, and continuous monitoring devices and methods consistent with accepted scientific practices; install, calibrate, maintain these devices to ensure the accuracy of the measure is consistent with the accepted industry standard, manufacturer's recommendation; use field measurement devices as directed by the manufacturer and do not use reagents beyond their expiration dates; calibrate electronic devices at least once per year; calibrate mechanical meters once every five years; maintain calibration records for at least three years.  APP violated and continues to violate this requirement each and every time it fails to properly use flow measurement, field measurement, and continuous monitoring devices.

### III.     REPORTING AND RECORD KEEPING REQUIREMENTS

A.      Condition S3.A.1 of the Permit requires APP to summarize, report, and submit monitoring data obtained during each monitoring period on the Discharge Monitoring Report ("DMR") form provided by Ecology.  Condition S3.A.6.a of the Permit requires APP to submit DMRs by the 15th day of the following month.  APP is in violation of this condition by failing to submit a DMR within the prescribed time for September 2018, October 2018, and July 2021.

B.      Condition S3.A.4 of the Permit requires APP to submit a contract laboratory report containing the analytical results from samples sent including information on the chain of custody, QA/QC results, and documentation of accreditation for the parameter.  APP is in violation of this condition by failing to submit a laboratory report as an attachment with the electronic DMRs for July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, March 2021, April 2021, May 2021, June 2021, July 2021, and August 2021.

C.      Condition S3.B of the Permit requires APP to retain records of all monitoring information for a minimum of three years.  Such information must include all calibration and maintenance records and all original recordings for continuous monitoring instrumentation, copies of all reports required by this Permit, and records of all data used to complete the application for this Permit.  APP is in violation of this condition because it has failed to retain records of such information, reports, and other documentation during the last three years.

D.      Condition S3.C requires that for each sample taken, APP must record the date, exact place, method, and time of sampling or measurement; the individual who performed the sampling or measurement; the dates the analyses were performed; the individual who performed the analyses; the analytical techniques or methods used; and the results of all analyses.  APP is in violation for failing to include the individual who performed the analyses; the analytical techniques or methods used; and the results of all analyses for July 2017, August 2017, May 2018, June 2018, July 2018, August 2018, March 2019, June 2019, August 2019, April 2020, May 2020, July 2020, August 2020, March 2021, April 2021, May 2021, June 2021, July 2021, and August 2021.

E.      Condition S3.E of the Permit requires APP to immediately take action to stop, contain, and clean up unauthorized discharges or otherwise stop the noncompliance and correct the problem.  Condition S3.E.2.a requires APP to report to Ecology any noncompliance that may endanger health or the environment; unanticipated bypasses that causes an exceedance of any effluent limit; an upset that causes exceedance of an effluent limit; violations of maximum daily or instantaneous maximum discharge limit of any pollutants in Section S1.A of the Permit; or any overflow prior to the treatment works, whether or not such overflow endangers health or the environment or exceeds any effluent limit in the permit within 24 hours of the occurrence.  Condition S3.E.2.b requires APP to also provide a written submission within five days of the time that the permittee becomes aware of any reportable event as stated above.

The submission must contain a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times; the estimated time the permittee expects the noncompliance to continue if not yet corrected; steps taken or planned to reduce, eliminate, and prevent recurrence of the noncompliance; and if the noncompliance involves an overflow prior to the treatment works, an estimate of the quantity (in gallons) of untreated overflow. APP is in violation of these conditions each and every time that it fails to perform all of these actions when it is unable to comply with any Permit condition, including during the following events:

- 15-gallon diesel spill on January 27, 2020, as documented by the Application for NPDES Permit to Discharge Wastewater Form 2F received by Ecology on December 18, 2020;
- 200-gallon fuel oil spill on January 27, 2020, as documented by the January 28, 2020 ERTS Report #696006;
- 100-gallon diesel spill on November 30, 2020, as documented by the December 3, 2020 ERTS Report #702255;
- 5-gallon diesel spill on August 21, 2019, as documented by the Application for NPDES Permit to Discharge Wastewater Form 2F received by Ecology on December 18, 2020;
- Diesel spill that "measured 10 to 20 feet" on February 11, 2019, as documented by the February 14, 2019 ERTS Report #687330;
- 1–2-gallon diesel spill on July 22, 2018, as documented by the August, 10, 2018 ERTS Report #683240;
- Other small spills as documented by the June 12, 2018 and August 24, 2020 Inspection Reports; and
- All effluent limit exceedances, as indicated in section I.

F.      Condition S3.F of the Permit requires the when the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application, or any report to Ecology, it must submit such facts or information promptly.  APP is in violation of this condition because it failed to report all significant leaks or spills of toxic or hazardous pollutants in the last three years, including a 200-gallon fuel oil spill on January 27, 2020; a 100-gallon diesel spill on November 11, 2020; a diesel spill that "measured 10 to 20 feet" on February 11, 2019; and a 1–2-gallon diesel spill on July 22, 2018.

## IV.     OPERATIONS AND MAINTENANCE VIOLATIONS

Condition S4.A of the Permit requires APP to properly operate and maintain all facilities or systems of treatment and control including: keeping a daily operation logbook (paper or electronic), adequate laboratory controls, and appropriate quality assurance procedures.  Condition S4.A. of the Permit also requires that APP submit an Operations and Maintenance ("O&M") Manual to Ecology by January 1, 2012.  The O&M Manual must consist of emergency procedures, wastewater maintenance procedures, cleaning instructions, sampling protocols, minimum staffing for proper compliance, monitoring schedule, and other specific case-by-case items.  The O&M Manual must also be reviewed annually and confirmed by letter to Ecology by January 1 of each year.  A copy of the approved O&M

Manual must be kept at the permitted facility.  APP has violated and continues to violate these conditions by failing to submit an O&M Manual, failing to submit annual letters stating that the O&M Manual has been reviewed, and failing to keep the approved O&M Manual at the permitted facility.

## V.     APPLICATION FOR PERMIT RENEWAL OR MODIFICATION FOR FACILITY CHANGES VIOLATIONS

Condition S6 of the Permit requires that APP submit an application for renewal of the Permit by January 31, 2015.  APP has violated this condition because its Permit application was submitted to Ecology on April 22, 2015.  Ecology required another Permit application to be submitted by August 21, 2020.  APP failed to submit that Permit application.  Ecology then extended the missed August 21, 2020 deadline to October 31, 2020.  APP again failed to submit its Permit application by the new October 31, 2020 deadline by submitting the Permit application on January 19, 2021.

## VI.    SPILL CONTROL PLAN VIOLATIONS

Condition S7 of the Permit requires APP to submit a Spill Control Plan that includes a list of oil and petroleum products and other materials used and/or stored on site; a description of preventative measures that prevent, contain, or treat the spills of these materials; a description of the reporting system used to alert the responsible manager in the event of a spill; and a description of the operator training to implement the plan.  This condition also requires APP to submit a Spill Control Plan by January 31, 2015; review the plan annually and update as needed; send changes to the plan to Ecology; and follow the plan throughout the term of the permit.  APP has violated and continues to violate this condition by failing to review the plan annually and update as needed, send changes to the plan to Ecology, and follow the plan throughout the term of the permit.

## VII.   STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

A.     Condition S8.A.1 of the Permit requires APP to submit a copy of the most current Stormwater Pollution Prevention Plan ("SWPPP") to Ecology postmarked no later than January 31, 2015, for review and comment.  The SWPPP and all of its modifications must be signed in accordance with Special Condition G1, and the SWPPP must be retained on-site or withing reasonable access to the site.  APP violated and continues to violate this condition by failing to submit a SWPPP to Ecology.

B.     Condition S8.A.2 of the Permit requires APP to modify the SWPPP whenever there is a change in design, construction, operation, or maintenance, which causes the SWPPP to be less effective in controlling the pollutants.  Whenever the description of potential pollutant sources or the pollution prevention measures and controls identified in the SWPPP are inadequate, the SWPPP must be modified, as appropriate, within two months of such determination.  The proposed modifications to the SWPPP must be submitted to Ecology at least 30 days in advance of implementing the proposed changes in the plan unless Ecology approves immediate implementation.  The permittee must provide for implementation of any

Notice of Intent to Sue - 6

modifications to the SWPPP in a timely manner. APP has violated this condition each and every time during the last five years there have been changes to the design, construction, operation, or maintenance, which causes the SWPPP to be less effective in controlling the pollutants, description of potential pollutant sources or the pollution prevention measures and controls identified in the SWPPP are inadequate.

C.     Condition S8.A.4 of the Permit requires that APP's SWPPP is prepared in accordance with the guidance provided in the Stormwater Pollution Prevention Planning for Industrial Facilities (Ecy Pub. No. 04-10-030, http://www.ecy.wa.gov/biblio/0410030.html). The plan must contain an assessment and description of existing and potential pollutant sources; a description of the operational Best Management Practices ("BMPs"); a description of selected source-control BMPs; a description of the erosion and sediment control BMPs; a description of the treatment BMPs; and an implementation schedule. APP has violated and continues to violate this condition by failing to prepare a SWPPP in accordance with the guidelines.

D.     Condition S8.B of the Permit requires APP to conduct two inspections per year, one during the wet season (October 1 - April 30) and the other during the dry season (May 1 - September 30). The wet season inspection must be conducted during a rainfall event by personnel named in the SWPPP to verify that the description of potential pollutant sources required under this permit are accurate; the site map as required in the SWPPP has been updated or otherwise modified to reflect current conditions; and the controls to reduce pollutants in stormwater discharges associated with industrial activity identified in the SWPPP are being implemented and are adequate. The wet weather inspection must include observations of the presence of floating materials, suspended solids, oil and grease, discolorations, turbidity, odor, etc. in the stormwater discharge(s). Personnel named in the SWPPP must conduct the dry season inspection. The dry season inspection must determine the presence of unpermitted non-stormwater discharges such as domestic wastewater, noncontact cooling water, or process wastewater (including leachate) to the stormwater drainage system. If an unpermitted, non-stormwater discharge is discovered, the permittee must immediately notify Ecology. APP is in violation of this condition because it failed to conduct two inspections per year, during the appropriate seasons, for the last five years.

E.     Condition S8.C of the Permit requires APP to evaluate whether measures to reduce pollutant loadings identified in the SWPPP are adequate and properly implemented in accordance with the terms of the permit or whether additional controls are needed. A record must be maintained summarizing the results of inspections and include a certification that the facility is in compliance with the plan and in compliance with this permit. The record must identify any incidents of noncompliance. APP has violated and continues to violate this condition because they have failed to perform these evaluations and maintain required records.

## VIII.   BEST MANAGEMENT PRACTICES VIOLATIONS

APP is in violation of the following BMP provisions in the Permit because it fails to implement these BMPs and incorporate them into its SWPPP:

A.      Condition S9.1 of the Permit requires that APP keep the tank farm containment area drain-valve closed at all times, except when draining accumulated stormwater into the treatment system.  APP must discharge the accumulated stormwater in the containment area at a rate not to exceed the design capacity of the oil/water separator as well as the design flow rate of any subsequent treatment units.

B.      Condition S9.2 of the Permit requires that APP inspect the oil/water separators on a weekly basis at minimum and maintain them as needed to ensure satisfactory performance. Dispose of oil sludges in a manner that will not cause water quality degradation to state waters.  Keep a record of inspection, maintenance, and disposal on file and available for review by Ecology.

C.      Condition S9.3 of the Permit requires that APP direct all stormwater runoff from the containment tank farm to the existing oil/water separator for treatment prior to discharge.

D.      Condition S9.4 of the Permit requires that APP Conduct all detergent washing of vehicles on established wash racks which drain into the sanitary sewer.

E.      Condition S9.5 of the Permit requires that APP immediately notify (within 24 hours) representatives of the Southwest Regional Office Spill Response Team at 360-407-6300, in the event of an accidental discharge of oil, chemicals, toxic or hazardous materials into waters of the state or onto land with a potential for entry into state waters, including groundwater.  A written spill report must be submitted to Ecology, Water Quality Program, within five days of the time the permittee becomes aware of the circumstances, unless Ecology waives or extends this requirement on a case-by-case basis.  APP violated and continues to violate this requirement of the Permit each and every time during the last five years that it failed to properly report a spill, including a 200-gallon fuel oil spill on January 27, 2020; a 100-gallon diesel spill on November 11, 2020; a diesel spill that "measured 10 to 20 feet" on February 11, 2019; a 1–2-gallon diesel spill on July 22, 2018; and other small spills identified in the June 12, 2018 and August 24, 2020 Inspection Reports.

F.      Condition S9.6 of the Permit requires that APP not discharge any emulsifiers, dispersants, fire suppression foam agents, or wash water to the oil/water separators.

G.      Condition S9.7 of the Permit requires that APP discharge contained, collected or accumulated oils and solvents directly to the waste oil tank and not to the oil/water separators or any sewer systems.  Keep records or manifests for the waste oil disposal (hauling) on-site and make available for inspection.

H.      Condition S9.8 of the Permit requires that APP employ BMPs to collect oil spillage when making and breaking hose connections, and to prevent spillage from all hoses, hose reels and filler nozzles.  Containment and other specialized oil cleanup equipment must be available at all times for immediate emergency use.

I.      Condition S9.9 of the Permit requires that APP employ best management practices on-site to reduce dust and debris by sweeping the area impacted by heavy vehicle traffic whenever weather permits.

J.      Condition S9.10 of the Permit requires that APP haul off-site for proper disposal all water drawn from storage tanks which contain fuel.

K.      Condition S9.11 of the Permit requires that APP conduct a daily inspection in the tank farm for leaks and spills.

L.      Condition S9.12 of the Permit requires that APP dispose of sludges, scales, and sediments from tanks in an approved manner and not to waters of the state, or to the sanitary sewer system.

M.      Condition S9.13 of the Permit requires that APP store all barrels, drums, or similar containers containing toxic or deleterious materials, including, but not limited to petroleum products, organic solvents, resins, strong acids and bases, cyanides, and heavy metal salts, in an upright position, in a bermed, covered area sufficient to prevent discharge into state ground or surface waters in the event of leakage or rupture.

N.      Condition S9.14 of the Permit requires that APP store empty barrels with all openings plugged, in an upright position, and at least twenty feet from a storm drain.

O.      Condition S9.15 of the Permit requires that APP inspect all galvanized steel or zinc containing structures and/or coatings exposed to rainfall at least once a month for corrosion and/or peeling.  Coat or re-coat any corroded areas, or areas beginning to corrode as soon as possible.

P.      Condition S9.16 of the Permit requires that APP routinely inspect building gutters and downspouts for maintenance and corrosion.  If corrosion is occurring, replace the corroded section or prepare surface for the proper application of an anti-corrosive, long-lasting coating.

Q.      Condition S9.17 of the Permit requires that APP consider alternative methods for controlling moss if zinc strips are used on rooftops.  If the rooftop is galvanized or has any galvanized hardware or appurtenances, the permittee must routinely inspect it for corrosion and take steps to prevent corrosion from occurring.

R.      Condition S9.18 of the Permit requires that APP routinely clean out and maintain stormwater catch basins and use catch basin filters.

## IX.    GENERAL CONDITION VIOLATIONS

A.      Condition G1 of the Permit requires that all applications, reports, or information submitted to Ecology must be signed and certified; all reports required by this permit and other information requested by Ecology must be signed by a person described above or by a duly authorized representative of that person; and if an authorization is no longer accurate

because a different individual or position has responsibility for the overall operation of the facility, a new authorization must be submitted to Ecology prior to or together with any reports, information, or applications to be signed by an authorized representative.  APP violated and continues to violate this requirement of the Permit each and every time during the last five years that it fails to meet the signatory requirements.

B.      Condition G20 of the Permit requires APP to notify Ecology as soon as they know or have reason to believe that any activity has occurred or will occur which would result in the discharge, on a routine or frequent basis, of any toxic pollutant which is not limited in this permit, if that discharge will exceed the highest of the following "notification levels:"

- One hundred micrograms per liter (100 µg/L);
- Two hundred micrograms per liter (200 µg/L) for acrolein and acrylonitrile; five hundred micrograms per liter (500 µg/L) for 2,4-dinitrophenol and for 2-methyl- 4,6-dinitrophenol; and one milligram per liter (1 mg/L) for antimony;
- Five times the maximum concentration value reported for that pollutant in the permit application in accordance with 40 CFR 122.21(g)(7); or
- The level established by the Director in accordance with 40 CFR 122.44(f).

APP must also notify Ecology about any activity has occurred or will occur which would result in any discharge, on a non-routine or infrequent basis, of a toxic pollutant which is not limited in this permit, if that discharge will exceed the highest of the following "notification levels:"

- Five hundred micrograms per liter (500 µg/L);
- One milligram per liter (1 mg/L) for antimony;
- Ten times the maximum concentration value reported for that pollutant in the permit application in accordance with 40 CFR 122.21(g)(7); or
- The level established by the Director in accordance with 40 CFR 122.44(f).

APP violated and continues to violate this requirement of the Permit each and every time during the last five years that it fails to meet these reporting requirements.

C.      Condition G21 of the Permit requires APP to submit reports of compliance or noncompliance with, or any progress reports on, interim and final requirements contained in any compliance schedule of this permit no later than 14 days following each schedule date. APP violated and continues to violate this requirement of the Permit each and every time during the last five years that it fails to submit a report of noncompliance, progress report, or other requirements contained in any compliance schedule of this permit to Ecology within 14 days.

X.      **CONCLUSION**

The above-described violations reflect those indicated by the information currently available to Waste Action Project.  These violations are ongoing.  Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Condition G17 of the Permit, APP is required to comply with all conditions of the Permit and any noncompliance constitutes a violation of the Clean Water Act and is

grounds for enforcement action.  Under Sections 309(g)(2)(A) and 404(s)(4) of the CWA, 33 U.S.C. § 1319(d) and 1344(s)(4), each of the above-described violations subjects the violator to a penalty of up to $56,461 per day for each violation.  In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against APP under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By: *s/Richard A. Smith*
Richard A. Smith
Savannah Rose


cc:    Michael Regan, Administrator, U.S. EPA
        Michelle Pirzadeh, Acting Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology
        C T Corporation System, Registered Agent (711 Capitol Way S Ste. 204, Olympia, WA, 98501-1267)